IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

VICTOR M. JAVITCH, Receiver,

                Plaintiff,              Case No. 3:02 CV 1609

-vs-

                                        MEMORANDUM OPINION

HARRY GOTTFRIED,

                Defendant.

KATZ, J.

      This matter is before the Court on Defendant's motion for summary judgment, Plaintiff's response, and Defendant's reply. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, Defendant's motion is granted in part and denied in part.

### BACKGROUND

      This is one of many cases spawned from a viatical insurance fraud case entitled *Liberte v. Capwill*, 229 F.Supp.2d 799 (N.D. Ohio 2002). The history of that litigation need not be repeated *in toto*, however, the Court finds the following facts to be relevant to the action herein.

      Defendant Gottfried was a Liberte agent who is alleged to have received nearly $30,000 in commissions from sales of viatical settlements to various residents of the State of Indiana. The *Liberte* action commenced in April 1999 and a general receiver was appointed three months thereafter. In December of 1999, Alta P. Shively filed a class action in Indiana state court against Gottfried, Liberte and Liberte's principals, among others. The complaint alleged claims based upon the sale of Liberte viatical settlement contracts. After Liberte and its principals defaulted, Gottfried remained the only viable defendant. Shively then petitioned the Indiana state court for

class certification. After approximately six months of negotiations, the putative class ("Shively Class") and Gottfried presented the Indiana court settlement in the form of a joint petition the purpose of which was to permit notice to the proposed class and allowing for an opt-out provision regarding the terms of the settlement. In January 2001, the Indiana state court approved the proposed settlement and notice to investors.

Following a period of notification and an opt-out date of March 22, 2001, the Indiana Court conducted a hearing on April 18, 2001 during which time the class was certified and the settlement approved. Prior to the hearing, thirteen investors, none of which were Gottfried's clients, opted out of the settlement and class action. The terms of the settlement allowed Gottfried to pay $30,000 in return for release of claims by the class against him.

On August 16, 2002, the receiver, filed this complaint against Gottfried alleging claims for: (1) violation of the Securities Act of 1933; (2) violation of the Securities Act of 1934; (3) RICO; (4) common law fraud; (5) unjust enrichment; (6) civil conversion; and (7) breach of fiduciary duty or duty to act in good faith. Defendant Gottfried moves for summary judgment on the basis of *res judicata* based upon the aforementioned Indiana state court proceedings. The Defendant submits that under the Full Faith and Credit Act, this Court must give the Indiana judgment effect and deny the duplicate claims invoked by the Receiver. As the issues have been fully briefed, the Court now turns to address the arguments presented.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)).  The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

*B. Res Judicata*

Under 28 U.S.C. § 1738, "judicial proceedings . . . shall have the same full faith and credit in every court within the United States. . . in the courts of such State, Territory or Possession from which they are taken." The Supreme Court in *Matsushita Electric Industrial Co., Ltd., v. Epstein*, 516 U.S. 367, 373 (1996), directed federal courts faced with such a situation to "accept the rules chosen by the State from which the judgment is taken." (Citation omitted.) Therefore, as correctly noted by the Defendant, the law of the State of Indiana is applicable to this analysis.

Indiana courts have established the following factors to determine whether claims are subject to claim preclusion:

4

> (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Afolabi v. Atlantic Mortg. & Investment Corp.,* 849 N.E.2d 1170, 1175 (Ind. Ct. App. 2006) (citation omitted).

Along with these factors, the Supreme Court of Indiana recognized that in order to accord a state court judgment full faith and credit, the analysis "turn[ed]on settled constitutional principles governing the preclusive effect" of the judgment. *Northern Indiana Commuter Transportation District v. Chicago SouthShore and South Bend Railroad,* 685 N.E.2d 680, 685 (Ind. 1998). Stated differently, this means that the preclusive effect of full faith and credit must also meet the requirements of procedural due process. *Aide v. Chrysler Financial Corp.,* 699 N.E.2d 1177, 1180 (Ind. Ct. App. 1998).

Accordingly, in order to properly determine whether or not the Receiver's claims herein are prohibited by the doctrine of *res judicata*, this Court must find the factors of claim preclusion and procedural due process have been satisfied.

*C. Analysis*

    1. <u>Claim Preclusion</u>

The Defendant contends that the Shively Judgment effectively bars claims brought by the Receiver on behalf of the investors as the investors who purchased settlements from Gottfried were parties to the Indiana action, had notice of the proceedings and agreed to be bound by the judgment. The Receiver agrees that the Indiana court which approved the Shively settlement did

5

have jurisdiction over the state claims before it, therefore, the first factor in the claim preclusion analysis is satisfied.

With regard to the second factor, the Receiver objects that the Shively judgment precludes claims by all investors and the Receiver. The Defendant finds the nature of the claims is irrelevant as the dismissal was on the merits. The wording of the Indiana court's Order regarding the Defendant was clear, "This action will be hereby dismissed on the merits and with prejudice, without costs to any party, other than as designated below as against Harry Gottfried, only." (Def's Appx. at No. 7, p. 5.) Based upon this language, the Court finds the former judgment to have been rendered on the merits.

The third factor, that the matter now in issue was or could have been determined in the prior action, is somewhat more problematic. The claims premised by the Receiver herein are brought on behalf of the entire class of investors as well as the Receivership Estate on behalf of CFL and VES. The Receiver seeks to recover commissions and investments alleging claims under both Ohio and federal law. While the Shively class investors brought claims under Indiana law with regard to their investments, they did not and could not have brought claims on behalf of the Receivership nor could they recovered commissions against the Defendant. However, to the extent that the Shively investors' claims regarding their investments were resolved as against the Defendant, the Receiver is estopped from asserting a claim on *their* behalf, based upon the language of the approved Shively judgment.

The Defendant takes issue with claims brought by the Receivership insofar as he contends that the claims relating to the sales of securities belong only to the investors. The history underlying the *Liberte* case belies that assertion. In January 2001, the Court approved a settlement

6

agreement in *Liberte* which empowered the Receiver to "continue to act on behalf of the plaintiffs, intervening plaintiffs, and their investors for the purposes of obtaining recovery of money and assets and to take direction of the U.S. District Courts in Akron and Toledo to enhance the economic interests of the plaintiffs, intervening plaintiffs as well as their investors with the goal of protecting the economic interests of the same." *Liberte*, Doc. No. 925.

In November 2002, the Court considered the method of distribution relative to recovered assets and weighed the arguments of a *pro rata* method versus a tracing method. Certain investors in the *Liberte* case seeking to recover proceeds from similar insurance policies which had matured advocated a tracing method. Those investors argued that because they were in matched policies and the proceeds were readily available, they should be allowed to recover the benefit of their bargain and the Court considered their argument as follows:

> Alternatively, the Crivello investors cite their ownership interests in the policies as a basis for their right to the death benefit. They rely upon the contract entered into with Liberte and the promises therein. The contracts entered into with all Liberte investors were relatively the same, varying only on the type of investment requested, traditional, cash flow, or non-conforming cash flow. The Crivello investors claim they were the actual beneficiaries of the policies, but there is nothing in the record to substantiate this. The documentation supplied by Liberte or VES to the investors may have listed them as beneficiaries on the policy, but there is nothing to substantiate that the Crivello investors were the actual named beneficiaries from the insurer's standpoint. Moreover, the remedies which the Crivello investors may have been entitled to under other law may be suspended under an equitable remedy.

*Liberte* 229 F.Supp.2d at 805. As the *Liberte* case evolved, the status of the investors relative to the claims involving the viatical settlements changed as well.

The Receiver's complaint clearly seeks recovery of the investments or consideration paid by the Liberte investors as well as commissions therefrom. The commission payments from Liberte are alleged to have come through VES. (Compl. at ¶ 18.) It is the view of this Court that

7

the matter regarding the Gottfriend investor claims as determined in the Shively judgment is sufficient to preclude similar investor claims from being asserted herein. However, those claims brought by the Receiver to the extent they are related to the agent's commissions could not have been determined in the prior action. Therefore, the third factor is satisfied as to the investor claims but not satisfied as to the Receiver's claims related to recovery of commissions.

The last factor considers privity between the parties. The Indiana courts recognize that "the doctrine of *res judicata* bars litigating a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies." *Richter v. Asbestos Insulating & Roofing,* 790 N.E.2d 1000, 1002 (Ind. Ct. App. 2003); *Small v. Centocor Inc.,* 731 N.E.2d 22, 26 (Ind. Ct. App. 2000), citing *Indiana Ins. Co. v. American Community Services, Inc.,* 718 N.E.2d 1147, 1155 (Ind. Ct. App. 1999). To this end, privity has been defined as "includ[ing] those who control an action and those whose interests are represented by a party to the action." *Richter v. Asbestos Insulating & Roofing,* 790 N.E.2d 1000, 1004 (Ind. Ct. App. 2003).

In this instance, the Indiana judgment stated in pertinent part:

> 3. Defendant Harry Gottfried and his present and former employees and agents and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") are hereby released and forever discharged from all manner of claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any of plaintiffs or any member or members of the Class who have not timely excluded themselves from the Class Action (including any of their past, present or future officers, directors, stockholders, agents, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners successors and assigns) and who purchased Liberte Viatical Settlements directly from Gottfried now has or hereafter can, shall or may have, relating in any way to any Claims which have been asserted or could have been asserted in this litigation against the Released Parties or any one of

them (the "Released Claims"). Such release shall be effective against such parties whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement, whether directly, representatively, derivatively or in any other capacity. No member of the Class shall hereafter seeks to establish liability against any Released Party based, in whole or in part, upon any of the Released Claims. Specifically excepted from the Release, are persons who purchased their Viatical Settlement from someone other than Harry Gottfried, which persons are also able to pursue an action against their individual salesman should they so desire. Also specifically exempted from the Release are any claims against Harry Gottfried which do not relate to the specific sale of a Liberty Capital Viatical Settlement to a Class Member.

. . .

9. The terms of this Order apply to all Class Members listed in the attachment to this Order, with the exception of Mrs. Mary F. King, Houston Holland, Russell Rowe, Marion & Bill Howard, Edgar Kidwell, Gerald Peters, June Darnold, Betty Burnham, Lewis & Ruth Rucker, James Browning and Mr. Kenneth Poe who have timely filed exclusions to opt out of this Class. They are not bound by this Order and may pursue their own remedies in their discretion.

(*Id*. at pp. 5-6.)

At the time the Shively Judgment was entered into and approved, April of 2001, in the *Liberte* action, the Liberte investors had just been certified as a class. *Liberte*, Doc. Nos. 991, 992 and 1056. Any discussion regarding controlling litigation by investors against brokers and agents did not begin until September of 2002 and it was not until October 2, 2002 that the Court expanded the Receivers' authority and held that "all claims against former agents and/or brokers of Alpha and Liberte for damages in contract or tort actions arising out of claims by investors are deemed to be assets of the receivership estates and must be filed by the Receivers, if at all." *Liberte*, Doc. No. 1758. Therefore, after October 2002, the Receiver was authorized to pursue claims against agents on behalf of the Liberte investors. That the Receiver was ultimately authorized by this Court to undertake representation of investor interests in satellite litigation constitutes a successive relationship to the rights of the investors regarding these agent/broker claims. *See Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 285 (Ind. Ct. App. 2004)

(privity characterized as "an identification of interest one person with another as to represent the same legal right") (citation omitted). Thus, as the Gottfried investors are precluded from raising claims against the Defendant, the Receiver, by virtue of his expanded authority, is also precluded as he is in privity with all investors, including those subject to the Shively judgment.

However, there is nothing to sustain a converse conclusion with regard to independent Receivership claims. The Defendant has not established that the Shively class represented or ultimately was granted authority to represent the Receiver in satellite litigation sufficient to establish privity. Accordingly, the fourth factor is satisfied as to the investor claims but not as to the independent Receiver claims.

### 2 Procedural Due Process

Having determined that the investor claims satisfy the claim preclusion requirements under Indiana law, the Court examines whether the judgment is complies with the dictates of procedural due process insofar as there was: (1) adequate notice; (2) an opportunity to be heard; (3) a right to opt out; and (4) adequate representation. *Aide*, 699 N.E.2d at 1180 citing *Matsushita,* 516 U.S. at 394-396. A review of the Defendant's affidavit, class complaint, petition for class certification, joint petition for preliminary approval of settlement, affidavit of notice and final order approving the settlement (Doc. No. 49) are sufficient to establish procedural due process with regard to the investor claims. Accordingly, the Court finds the Shively judgment to be entitled to full faith and credit as it pertains to the investor claims seeking return of their investments.

## CONCLUSION

For the reasons stated above, the Court finds the Defendant's motion for summary judgment (Doc. No. 46) is granted as to Counts 1, 2, 3, and 4 of the complaint, pertaining to

claims for recovery of investments. The Defendant's motion for summary judgment (Doc. No. 46) is denied as to Counts 5, 6, 7 and 8 regarding claims by the Receivership estate for return of commissions.

    IT IS SO ORDERED.

                                                           s/ *David A. Katz*
                                                           DAVID A. KATZ
                                                           U. S. DISTRICT JUDGE